IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| DAVID BUTTROSS, d/b/a/ FL20 INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:22-CV-00086-H-BU |
| GREAT LAKES INSURANCE SE, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

This case involves an insurance dispute between plaintiff David Buttross, doing business as FL20 Inc., and defendant Great Lakes Insurance SE (Great Lakes). After Great Lakes denied his insurance claims, Buttross brought this suit alleging that his policy covered the damage to his properties and Great Lakes's denial of coverage violated Texas law.

The case is before the Court on Great Lakes's Motions to Exclude the Testimony and Reports of Buttross's experts, Dkt. Nos. 28, 30, 41, and Motion for Summary Judgment, Dkt. No. 22. For the reasons explained below, the undersigned RECOMMENDS that the Court (1) DENY in part and GRANT in part the Motion to Exclude the Testimony and Report of Neil Hall, (2) DENY the Motion to Exclude the Testimony and Report of Kevin Funsch, (3) DENY the Motion to Exclude the Testimony and Report of Dominick Claus, and (4) DENY the Motion for Summary Judgment.

# I.  JURISDICTION

Great Lakes removed this case from Texas's 42nd Judicial District Court. Dkt. No. 1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because FL20 Inc. is a citizen of Texas, Great Lakes is a citizen of Germany, and the case's amount in controversy exceeds $75,000.[1] *See* Dkt. No. 1 at 2–5. The undersigned has the authority to submit the following Findings, Conclusions, and Recommendations after United States District Judge James Wesley Hendrix referred this case to the undersigned for pretrial management. Dkt. No. 7; 28 U.S.C. § 636(b)(1)(B).

# II.  FACTUAL BACKGROUND

The underlying facts in this case are not in dispute. Buttross owns commercial properties located in Abilene, Texas, at 202 S. Leggett Dr., 206–270 S. Leggett Dr., 209 S. Leggett Dr., 212–224 S. Leggett Dr., 265 S. Leggett Dr., and 3814 N. 1st St. (Properties). Dkt. No. 1-1 at 4–5; *see also* Dkt. No. 22-2. In 2020, Buttross purchased an insurance policy (Policy), Dkt. No. 22-2, through Great Lakes. The Policy provided coverage from July 20, 2020, to July 20, 2021, for certain losses, including "direct physical loss unless the loss is excluded or limited in this policy." Dkt. No. 22-2 at 2, 48. The Policy excluded damage incurred outside the policy period and physical loss caused by "faulty, inadequate or defective design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; materials used in repair, construction, renovation, or remodeling; or

---

[1] Great Lakes removed this case while Gloria Valdez—a Texas citizen—remained as a defendant. *See* Dkt. Nos. 1, 1-1. On November 7, 2022, the Court accepted the undersigned's recommendation to grant Valdez's Motion to Dismiss. Dkt. No. 13. In that Order, the Court confirmed its jurisdiction despite Valdez's initial presence, relying on the Fifth Circuit's decision in *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 474 (5th Cir. 2022). *Id.*

maintenance." Dkt. No. 22-4 at 467 (cleaned up); *see* Dkt. No. 22 at 6; Dkt. No. 22-2 at 37, 48.

On April 12, 2021, a storm purportedly struck parts of Taylor County. Dkt. No. 1-1 at 5. Buttross alleges that wind and hail from the April 2021 storm caused damage to the Properties. *Id.* Buttross filed claims with Great Lakes for coverage under the Policy. Dkt. No. 22-3. Great Lakes investigated Buttross's claims, concluded that the damage was not covered, and denied the claims. Dkt. Nos. 22-4–22-6.

## III.  THE PARTIES

### A.    Procedural History

After Great Lakes denied Buttross's claims, Buttross sued for (1) breach of contract, (2) violation of Texas Insurance Code § 541.060(a), (3) violation of Texas Insurance Code § 542.058, (4) breach of duty of good faith and fair dealing, and (5) violations of the Texas Deceptive Trade Practices Act.[2] Dkt. No. 1-1 at 10–13. Great Lakes removed the case to this Court on June 14, 2022. Dkt. No. 1.

### B.    Great Lakes's Motions to Exclude Experts

After filing its Motion for Summary Judgment, Great Lakes filed Motions to Exclude the testimony and reports of Buttross's experts Neil Hall, Kevin Funsch, and Dominick Claus. Dkt. Nos. 28, 30, 41.[3]

---

[2] As referenced previously, Buttross also brought claims against Gloria Valdez for her role as Great Lakes's agent. Dkt. No. 1-1 at 13–15. The Court dismissed all claims against Valdez after Great Lakes accepted liability for Valdez's actions, and thus, Valdez is no longer a party to this suit. Dkt. No. 13, *see also* Dkt. No. 11.

[3] The undersigned will address the Motions to Exclude before the Motion for Summary Judgment to ensure that only proper Rule 56 evidence is considered.

### 1.    *Neil Hall*

Hall is a licensed architect and engineer whom Buttross retained as an expert to determine the cause of the damage to the Properties and recommend repairs. Dkt. No. 20 at 1–2; *see also* Dkt. No. 23-1 at 2. Hall's expert report, Dkt. No. 23-1, concluded that hail from the April 2021 storm caused the damage to the Properties. Dkt. No. 23-1 at 2–8. To arrive at his conclusion, Hall used commercial weather data from April 12, 2019, to December 30, 2022, to develop a list of potential hail-causing storms that occurred at or near the Properties. *Id.* at 3–6. Hall analyzed the characteristics of each storm and determined that just two "candidate storms"—the April 12, 2021 storm and a storm that occurred on June 5, 2019—could have caused the damage to the Properties. *Id.* at 5–6.

Next, Hall used "splatter marks" that he observed on his March 31, 2023 site visit to the Properties to date the hail damage and determine which of the "candidate storms" was responsible.[4] *Id.* at 4–6. Hall's observation of splatter marks on his March 31, 2023 visit was crucial because he claims "the industry-accepted consensus" is that splatter marks fade from ordinary view after two years. *Id.* at 5. From this, Hall concluded that the splatter marks found during his site visit were "far more likely" to have come from the April 2021 storm than the June 2019 storm. *Id.* Hall's report also details the damage he traces to the April 2021 storm and recommends repairs to remedy that damage. *Id.* at 7.

Great Lakes asks the Court to exclude Hall's testimony and report as well as Hall's Declaration, Dkt. No. 25-1, attached to Buttross's Response to Great Lakes's Motion for

---

[4] Hall explains that splatter marks occur after wet or slushy hail has struck a surface "covered with an age-related patina or organic film, leaving a clean-spot and restoring the original surface condition." Dkt. No. 23-1 at 5.

Summary Judgment. Dkt. No. 31 at 1–2. Great Lakes does not maintain that Hall lacks adequate qualifications or that his testimony and report are irrelevant. *Id.* Instead, Great Lakes argues that Hall's opinions are unreliable because he did not consider alternative causes of damage. *Id.*

According to Great Lakes, Hall's report is unreliable because he failed to analyze and rule out alternatives such as wear and tear, improper installation, or deferred maintenance before he concluded that the April 2021 storm caused the damage to the Properties. *Id.* at 3–6. Likewise, Great Lakes faults Hall for omitting hail-producing storms that occurred before April 12, 2019, from his analysis. *Id.* at 3. Great Lakes also argues that Hall's Declaration must be excluded because it lacks reliability for the same reasons as Hall's original report and was not filed on time. *Id.* at 6–8.

In his Response, Buttross argues that Hall *did* consider alternative causes like wear and tear, improper installation, and deferred maintenance. Dkt. No. 40 at 6–7. Buttross highlights portions of Hall's report where Hall seemingly acknowledged these factors. *Id.* at 6. Buttross also argues that Hall did not need to consider storms before April 12, 2019, because Hall found no indication of hail damage before that date. *Id.* at 4–7. Buttross cites Hall's opinion that the presence of splatter marks at the Properties indicates that the hail damage occurred within the past two years. *Id.* at 4–5. Thus, says Buttross, Hall did not need to consider storms before April 12, 2019, because those storms occurred more than two years before his March 2023 site visit. *Id.*

Additionally, Buttross contends that any arguments based on Hall's purported failure to consider alternative causes go to the weight, not the admissibility, of Hall's opinions.

*Id.* at 6–7. Finally, Buttross argues that Hall's Declaration is reliable for the same reasons that his original report and was timely filed because it is not a report requiring disclosure, reasoning that it contains no new findings or opinions. *Id.* at 7.

### 2.    *Kevin Funsch*

Buttross also retained Kevin Funsch, a licensed public adjuster, to estimate the costs of repairing the damage to the Properties. Dkt. No. 20 at 2–3. Funsch's report calculates the costs to make the repairs recommended in Hall's report. *See* Dkt. No. 29-2. Great Lakes asks this Court to exclude Funsch's report and testimony solely on the basis that they are unreliable. Dkt. No. 29. Specifically, Great Lakes argues that Funsch's opinions are unreliable because he based his damages calculations on Hall's recommended repairs. *Id.* at 3. Second and relatedly, Great Lakes maintains that Funsch is not reliable because he did not explain the "basis for believing in and relying on Hall's determination." *Id.* at 5.

Buttross counters that because Hall's opinions are reliable, so too are Funsch's. Dkt. No. 40 at 8. Second, Buttross contends that Funsch conducted an independent investigation to determine the cost of making repairs, including a personal inspection of the Properties. *Id.*

### 3.    *Dominick Claus*

Claus is a public adjuster who, prior to this suit, worked for Buttross and personally interacted with Great Lakes during the claims process and produced estimates regarding the damage to the Properties. Dkt. Nos. 20 at 4–5; 45 at 1–3.

Great Lakes asks the Court to exclude Claus's testimony and estimates on two grounds. Dkt. No. 42. First, Great Lakes points out that Buttross has not disclosed a report

authored by Claus before the deadline in the Court's Scheduling Order, Dkt. No. 10. *Id.* at 1–2. Great Lakes argues that this lack of expert report means that Buttross cannot call Claus as an expert. *Id.* Second, Great Lakes takes issue with estimates[5] prepared by Claus, saying that they are not relevant because they do not offer an opinion regarding the cause of Buttross's loss. *Id.* at 2.

In response, Buttross stipulates that he will not call Claus as an expert witness. Dkt. No. 45 at 1. Buttross does, however, plan on calling Claus as a fact witness. *Id.* Buttross claims that Claus's involvement in the facts giving rise to this suit means he can provide factual testimony regarding Great Lakes's handling of Buttross's claims. *Id.* at 1–2. Buttross also seeks to introduce photographs and estimates from Claus.[6] *Id.* at 2.

In its Reply, Great Lakes accepts Buttross's stipulation; nonetheless, it seeks to exclude Claus's "'estimate of covered damage' and any testimony regarding the same" as not relevant. Dkt. No. 47 at 1. Again, Great Lakes contests the relevance of Claus's estimates because they "provide[] no opinions or analysis in a report or otherwise regarding the cause of loss" and, therefore, "any attempt by Claus to testify regarding the nature or extent of covered damage would be conclusory at best." *Id.* at 1–2.

## C.    Great Lakes's Motion for Summary Judgment

Great Lakes's Motion for Summary Judgment seeks judgment on all claims, contractual and extracontractual. Dkt. No. 22 at 1. Great Lakes first argues that Buttross cannot

---

[5] Great Lakes has not provided the Court with a copy of Claus's estimates or otherwise informed the Court where it may locate them. *See* Dkt. Nos. 41–42, 47.

[6] It is unclear from the briefing how Buttross reconciles his plans to introduce Claus's estimates with his stipulation to not call Claus as an expert witness. But as explained below, it is unnecessary tor resolve this tension at this juncture.

prevail on his breach-of-contract claim because he cannot segregate damages covered by the Policy from damage that is not; thus, he is barred from recovering under Texas's doctrine of concurrent causation.[7] *Id.* at 5–9. Great Lakes contends Buttross cannot satisfy the concurrent-causation doctrine because: (1) Hall did not segregate damage caused by the April 2021 storm from damage potentially caused by a June 2019 storm; (2) Hall did not segregate damage caused by the April 2021 storm from damage caused by wear and tear, improper installation, or deferred maintenance; and (3) Buttross lacks evidence demonstrating the Properties' condition before the date of loss. *Id.* at 9–13.

As for Buttross's claims alleging violations of the Texas Insurance Code, breach of duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act (extracontractual claims), Great Lakes argues summary judgment is appropriate because Buttross cannot assert an independent injury for these claims if his breach-of-contract claim fails. *Id.* at 9–11.

Buttross makes three arguments in rebuttal. First, Buttross contests whether the doctrine of concurrent causation even applies. Dkt. No. 25 at 6–7, 12–13. According to Buttross, the doctrine requires a plaintiff to segregate damages only if there is "reasonable evidence that the insured's property was damaged by a non-covered peril." *Id.* at 6. Buttross claims that Great Lakes has yet to provide evidence of damage not covered by the Policy and, therefore, he has no burden to segregate damages. *Id.* In addition, Buttross says that

---

[7] As discussed more fully below, that doctrine places an additional requirement on a plaintiff to provide a jury with a "reasonable basis" for allocating damage when a covered peril and an excluded peril combine to cause an injury. *Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597, 601 (Tex. 1993).

the doctrine applies only to perils and not to conditions; thus, the doctrine does not require that he segregate covered damage from damage linked to policy exclusions like wear and tear, improper installation, or deferred maintenance. *Id.* at 12–13.

Second, if Buttross does have the burden to segregate damages, he notes that Hall attributes 100 percent of the Properties' damage to a covered cause—the April 2021 storm. *Id.* at 10; *see also* Dkt. No. 23-1 at 6. Buttross maintains that this allocation segregates covered damage from non-covered damage and satisfies any burden he might have under the concurrent-causation doctrine. Dkt. No. 25 at 10.

Finally, Buttross says that the presence of a genuine issue of material fact for his breach-of-contract claim necessarily means that a genuine issue of material fact exists for each extracontractual claim. *Id.* at 13–14.

## IV. MOTIONS TO EXCLUDE

### A. Motion-to-Exclude Standard

"The admissibility of expert testimony is governed by the same rules, whether at trial or on summary judgment." *First United Fin. Corp. v. U.S. Fid. & Guar. Co.,* 96 F.3d 135, 136–37 (5th Cir. 1996). Federal Rule of Evidence 702 governs the admission of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and meth-
> ods; and
>
> (d) the expert has reliably applied the principles and methods
> to the facts of the case.

When it comes to expert testimony, the role of a district court is to serve as a gate-keeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149–52 (1999). The relevance of an expert's testimony depends on whether their knowledge would be helpful to the trier of fact. *Daubert*, 509 U.S. at 591. All other requirements under the Federal Rules and the *Daubert* factors go towards an expert's reliability. *See Burst v. Shell Oil Co.*, 104 F. Supp. 3d 773, 777–78 (E.D. La. 2015).

As explained above, Great Lakes seeks to exclude Hall and Funsch on the sole basis that their opinions are unreliable. In determining reliability, a trial court must find that an expert opinion has "a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. This assessment depends in part on the validity of the reasoning and methodology underlying the expert's opinion. *Guzman v. State Farm Lloyds*, 456 F. Supp. 3d 846, 852 (S.D. Tex. 2020) (citing *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009) (per curiam)). Accordingly, expert testimony "based merely on subjective belief or unsupported speculation" should be excluded. *Burst*, 104 F. Supp. 3d at 777. The burden of showing the reliability of an expert and their reasoning falls to the party seeking to admit the expert's testimony. *Id.* at 776–77; *see also Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

10

But not every critique of an expert or their reasoning goes toward the admissibility of their testimony. Generally, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). In most cases, "shaky but admissible" expert evidence is best addressed by "[v]igorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof." *Daubert*, 509 U.S. at 596. Thus, "the rejection of expert testimony is the exception rather than the rule." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting Fed. R. Evid. 702 advisory committee's notes (2000)) (internal quotation marks omitted).

## B.  Discussion and Analysis

### 1.  *The Court should deny Great Lakes's motion to exclude Neil Hall's testimony and report but should strike portions of his Declaration.*

Great Lakes asks the Court to exclude Hall's report and testimony as unreliable. It also urges the Court to exclude Hall's Declaration, Dkt. No. 25-1, because it is unreliable and untimely.

### i.  Hall's testimony and report

Great Lakes argues Hall's report and testimony are not reliable because Hall failed to consider alternative causes—such as wear and tear, improper installation, deferred maintenance, and pre-April 2019 storms—before he concluded that the April 2021 storm was the sole cause of the damage to the Properties.

When an expert offers an opinion as to causation, "[a] necessary ingredient of such theorizing . . . is the exclusion of alternative causes." *Michaels v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000). Thus, a court must consider "whether the expert 'adequately accounted for obvious alternative explanations.'" *Guzman*, 456 F. Supp. 3d at 852 (quoting Fed. R. Evid. 702 advisory committee's notes (2000)). At the same time, admission of an expert's opinions does not require the expert to rule out every possible alternative cause. *See Dalton v. C. R. Bard, Inc.*, No. 3:19-CV-2484-D, 2020 WL 1307965, at *5 (N.D. Tex. Mar. 19, 2020) (citing *Chrastecky v. C. R. Bard, Inc.*, No. A-19-CV-1240-LY-SH, 2020 WL 748182, at *6 (W.D. Tex. Feb. 14, 2020)). It is only when an expert fails to consider obvious alternatives or explain their reasoning for ruling out an alternative that exclusion is proper. *Lilley v. Home Depot U.S.A., Inc.*, 567 F. Supp. 2d 953, 958 (S.D. Tex. 2008).

The facts in this case track closely with those in *Hub Texas, LLC v. Arch Specialty Insurance Co.*, a case involving an insurance dispute regarding alleged hail damage. No. 5:21-CV-180-H-BQ, 2023 WL 2772052, at *1 (N.D. Tex. Mar. 21, 2023). There, the Court addressed the defendant's motion to exclude the plaintiff's causation expert for "fail[ing] to consider and/or eliminate" the possibility of damage from non-hail causes. *Id.* at 5. The Court rejected this argument because the expert's report "gave reasoned explanations for discounting[] other potential sources of the damage." *Id.*

The Court noted that the defendant's challenge came against the backdrop of courts "routinely reject[ing] challenges to the admissibility of expert testimony based on arguments that the expert failed to take into account certain data in forming his or her opinions." *Id.* at 8 (quoting *Patton v. Metro. Lloyds Ins. Co. of Tex.*, No. 5:21-CV-074-H, 2022 WL

2898946, at *6 (N.D. Tex. Feb. 14, 2022) (Hendrix, J.) (internal quotation marks omitted). The Court found that the facts did not warrant an exception to that general rule, stating "this [was] not a case where an expert wholly failed to consider alternative causes of the damage." *Id.* at 6 (citing in contrast, *Guzman*, 456 F. Supp. 3d at 852–53).

The Court in *Hub Texas* reached its conclusion by homing in on the reasoning and methodology underlying the expert's conclusion. *Id.* at 5–7. It recounted how the expert personally observed the property during a site visit and then described how the expert's observations on that visit—including observations of splatter marks—allowed the expert to rule out other potential causes based on the physical characteristics of the damage. *Id.* at 6.

*Hub Texas* supports the reliability of Hall's opinions. Contrary to Great Lakes's argument, the undersigned finds that Hall did look for and consider the possibility that wear and tear, improper installation, or deferred maintenance caused damage to the Properties. Like the expert in *Hub Texas*, Hall conducted a site visit to the Properties, and in doing so, he independently observed the damage to the Properties regardless of its source. Dkt. No. 23-1 at 5–6. Indeed, Hall's report notes damage that could have come from hail or wear and tear and improper installation but explains why he ruled out these alternative explanations. *Id.* at 7 ("The depression in the mod-bit meant the missing foil was damaged by hail and had not 'erupted' due to vapor pressure as might occur with a paint blister."). And when Hall detected a defect that was not caused by hail, he explained why that defect did not contribute to the damage found at the Properties. *Id.* ("I found raised blisters not caused by hail (Photo 98), but none of these blisters had erupted to expose the underlying bitumen.").

Even if Hall's report did not always rule out wear and tear, improper installation, or deferred maintenance explicitly, the examples cited above provide a sufficient basis to find that Hall accounted for alternative causes before he rendered his opinion. *See also Whatley v. Great Lakes Ins. SE*, No. 1:19-CV-444, 2020 WL 8970502, at *8–9 (E.D. Tex. Nov. 30, 2020) (denying a motion to exclude an expert even though the expert's report "d[id] not explicitly lay out that he ruled out maintenance or construction issues").

Hall also provided a reasoned basis for omitting pre-April 2019 storms from his analysis. Hall explained his opinion that the splatter marks found on the Properties during his March 2023 site visit came from hail less than two years old because the "industry-accepted consensus" is that splatter marks fade from view after two years. Dkt. No. 23-1 at 4–5. From this, Hall could reasonably rule out pre-April 2019 storms as the source of the Properties' damage because those storms were more than two years removed from Hall's observation of splatter marks.

Hall's reasoning refutes any notion that he ignored earlier storms for some arbitrary reason or that his opinion is based entirely on mere speculation, as Great Lakes implies. Dkt. No. 31 at 6. Great Lakes may still critique Hall's reliance on splatter marks and his decision to omit pre-April 2019 storms from his analysis, but those arguments are better suited for challenging the weight—not the admissibility—of his opinions.

For these reasons, the undersigned finds that Hall adequately considered the possibility of alternative causes. Accordingly, the undersigned finds Hall's opinions to be reliable and RECOMMENDS that the Court deny the Motion to Exclude Hall's testimony and report.

ii.    <u>Hall's Declaration</u>

For the reasons provided above, the undersigned also finds that Hall's Declaration, Dkt. No. 25-1, should not be excluded as unreliable. Still, there is the issue of whether the Court must strike Hall's Declaration because it was not filed in a timely manner. Under the Court's Scheduling Order, disclosure of expert witnesses and their reports was due by May 8, 2023, and discovery to be completed by August 4, 2023. Dkt. No. 10 at 2–6. Buttross filed Hall's Declaration on August 21, 2023, as part of his Response to Great Lakes's Motion for Summary Judgment. Dkt. No. 25-1.

Much of Hall's Declaration addresses issues that were the subject of his original report. *See* Dkt. No. 25-1 at 1–3. Those portions of Hall's Declaration are properly before the Court. *City of Allen v. Time Warner Cable Texas, LLC*, No. 6:19-cv-345-ADA-JCM, 2021 WL 8442040, at *7 (W.D. Tex. Oct. 5, 2021) ("[D]istrict courts have allowed supplementary disclosures when the reports only reiterate past opinions.").

But there are other aspects of Hall's Declaration that attempt to rebut the opinions of one of Great Lakes's experts. Dkt. No. 25-1 at 4–5. The Scheduling Order set a June 26, 2023, deadline for disclosing rebuttal expert testimony. Dkt. No. 10 at 2. Hall's Declaration was not filed until August 21, 2023. *See* Dkt. No. 25-1. Additionally, Hall's original report did not address Great Lakes's experts. *See* Dkt. No. 23-1. Thus, those portions of the Declaration that rebut Great Lakes's expert are untimely and should be excluded. *See also Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 603 (S.D. Tex. 2001) ("A subsequent expert affidavit submitted to rebut a summary judgment motion may be excluded if it differs from an earlier Rule 26 report.").

For these reasons, the undersigned RECOMMENDS that the Court grant the Motion to Exclude the Testimony and Report of Neil Hall in part and exclude the portions of Hall's Declaration that serve only as rebuttal to Great Lakes's expert.[8]

### 2.    The Court should deny Great Lakes's motion to exclude Kevin Funsch's testimony and report.

Great Lakes raises two grounds for excluding Funsch's testimony and report. First, Great Lakes believes that Funsch's testimony and report are unreliable because Funsch relied on Hall's repair recommendations to make his damages calculations. Essentially, Great Lakes argues that Funsch's opinions are fruits of the poisonous—or, more aptly, unreliable—tree. This argument lacks merit, however, if the Court deems Hall's opinions reliable. *See Hub Texas, LLC v. Arch Specialty Ins. Co.*, No. 5:21-CV-180-H-BQ, 2023 WL 2776525, at *6–7 (N.D. Tex. Mar. 21, 2023) (rejecting a similar argument).

Second, Great Lakes argues that Funsch is unreliable because he did not explain the "basis for believing in and relying on Hall's determination." Dkt. No. 29 at 5. The undersigned finds this argument unpersuasive because "[i]t is not unusual in insurance coverage cases to have separate causation and damages experts, and to have the damages expert rely on causation opinions from the separate expert." *Farris v. Lloyds*, No. H-19-3872, 2021 WL 355968, at *3 (S.D. Tex. Feb. 2, 2021) (rejecting defendant's motion to exclude plaintiff's damages expert, Kevin Funsch, because he relied on the report of plaintiff's causation expert, Neil Hall); *see also Daubert*, 509 U.S. at 592 ("[A]n expert is permitted wide lati-

---

[8] The undersigned finds that the portions of Hall's Declaration at issue are not material to the resolution of the Motion for Summary Judgment; nonetheless, in line with this recommendation, the undersigned has not considered the portions of Hall's Declaration that are not properly before the Court during the analysis of Great Lakes's Motion for Summary Judgment.

tude to offer opinions, including those that are not based on firsthand knowledge or observation.").

Given this, the undersigned RECOMMENDS that the Court deny the Motion to Exclude Funsch's testimony and report.

3. ***At this time, the Court should deny Great Lakes's motion to exclude Dominick Claus's testimony and work product.***

Great Lakes asks the Court to exclude Claus's testimony and estimates because they are not relevant. In its Reply, Great Lakes accepts Buttross's stipulation that he will not call Claus as an expert witness. Dkt. No. 47 at 2. Still, Great Lakes asks the Court to exclude estimates prepared by Claus and any testimony regarding those estimates as irrelevant. Dkt. No. 47 at 1–2. Great Lakes, however, has failed to provide the Court with a copy of the estimates it seeks to exclude. *See* Dkt. Nos. 41–42, 47. Without these estimates, the Court is unable to assess their relevance. *Jackson v. Low Constr. Grp., LLC*, No. 2:19-CV-130-KS-MTP, 2021 WL 1030995, at *2 (S.D. Miss. Mar. 17, 2021) ("Defendant did not attach a copy of the report or otherwise direct the Court to a copy in the record. Therefore, the Court cannot assess the document's relevance or allegedly prejudicial nature.").

Accordingly, the undersigned RECOMMENDS that the Court deny the Motion to Exclude Claus's testimony and work product without prejudice to Great Lakes filing a properly supported motion.

## V.  MOTION FOR SUMMARY JUDGMENT

Having addressed Great Lakes's Motions to Exclude, the undersigned now turns to its Motion for Summary Judgment, Dkt. Nos. 11–13.

## A.    Summary-Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020). The moving party "bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up). Thus, the moving party must "identify those portions of [the record] which it believes demonstrate [that] absence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In evaluating a summary-judgment motion, the Court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "[A] fact is 'material' if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (citation and quotation marks omitted). A dispute is not genuine if the facts being asserted are "blatantly contradicted by the record so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Court must consider materials cited by the parties, but it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 does not impose a

duty on the Court to "sift through the record in search of evidence" to support the non-movant's opposition to the motion for summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16, n.7 (5th Cir. 1992)).

"[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or [ ] a defendant . . . asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923–24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

Once the movant has satisfied this burden, the burden shifts to the nonmovant to demonstrate that a genuine issue of material fact does exist and that the evidence, viewed in favor of the nonmovant, permits a jury verdict for the nonmovant. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020). The nonmovant must "go beyond the pleadings" and produce evidence showing that there is a genuine issue of fact. *Celotex*, 477 U.S. at 324. However, the non-moving party cannot overcome its burden by merely alleging legal conclusions or unsubstantiated assertions; instead, it must present affirmative evidence that supports the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[T]he purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether

there is a genuine need for trial"). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

## B.    Discussion and Analysis

Because this Court has diversity jurisdiction, Texas law governs. *Greenwich Ins. Co. v. Capsco Indus., Inc.*, 934 F.3d 419, 422 (5th Cir. 2019). The undersigned will first address Buttross's breach-of-contract claim before turning to his extracontractual claims.

### 1.    *The Court should deny Great Lakes's motion for summary judgment on the breach-of-contract claim.*

Buttross's breach-of-contract claim alleges that Great Lakes's "failure and/or refusal to pay adequate coverage as obligated under the Policy" represents a breach of the parties' insurance contract. Dkt. No. 1-1 at 10. To prevail on that claim, Buttross must show: (1) the existence of a valid contract; (2) his performance or tendered performance; (3) Great Lakes's breach; and (4) damages. *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018).

Great Lakes posits that it is entitled to judgment as a matter of law because Buttross cannot satisfy his burden under the doctrine of concurrent causation. That doctrine applies in cases where covered and excluded perils combine to cause an injury. *Lyons*, 866 S.W.2d at 601. In those instances, the doctrine requires an insured to produce sufficient evidence to give a jury a "reasonable basis on which to allocate the damage" between the covered and excluded perils. *Id.*

Great Lakes maintains that Buttross has not produced this "reasonable basis" because: (1) Hall did not segregate damage caused by the April 2021 storm from damage

potentially caused by a June 2019 storm; (2) Hall did not segregate damage caused by the April 2021 storm from damage caused by wear and tear, improper installation, or deferred maintenance; and (3) Buttross lacks evidence demonstrating the condition of the Properties before the date of loss. Dkt. No. 22 at 9–13. Buttross counters that Hall's report supplies the "reasonable basis" for allocating between covered and non-covered damage because Hall attributes the Properties' damage to a single cause—the April 2021 storm. Dkt. No. 25 at 8–12.[9]

Federal courts applying Texas law have struggled with whether a plaintiff can satisfy their burden under the concurrent-causation doctrine with evidence that attributes all damage to a single covered cause. *See Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.*, 12 F.4th 467, 472 (5th Cir. 2021); *Overstreet v. Allstate Vehicle & Prop. Ins. Co.*, 34 F.4th 496, 499 (5th Cir. 2022). Only recently has the Fifth Circuit provided clarity. *See Advanced Indicator & Mfg., Inc. v. Acadia*, 50 F.4th 469, 476–77 (5th Cir. 2022) (per curiam).[10] In *Acadia*, the parties disputed whether Hurricane Harvey—a covered peril—or an excluded peril caused damage to the plaintiff's property. *Id.* at 472. The district court granted summary judgment to the insurance provider after it found that the plaintiff did not adequately segregate covered from non-covered damages. *Id.* at 476.

The Fifth Circuit reversed. It pointed out that an expert for the plaintiff testified that the damage to the property "was 'absolutely' caused only by the hurricane." *Id.* at 476. The

---

[9] The undersigned finds it unnecessary to address Buttross's arguments that the concurrent-causation doctrine does not apply because—at this stage—he can satisfy the doctrine's demands.

[10] Neither party addresses the *Acadia* decision. *See* Dkt. Nos. 22, 25, 27.

Court also noted that the record contained evidence indicating that the property "was in good shape" before the hurricane hit. *Id.* The Court held that the evidence attributing all damage to Hurricane Harvey meant that "the concurrent causation doctrine d[id] not bar recovery" because a jury "could reasonably find that all of [plaintiff's] loss comes from a covered cause." *Id.* at 477.

In so holding, the Fifth Circuit seemingly announced for the first time that a plaintiff could satisfy the demands of the concurrent-causation doctrine by introducing evidence that all damage came from a covered peril. *Compare id.* ("An insured may carry its burden by putting forth evidence demonstrating that the loss came solely from a covered cause . . . ."), *with Frymire*, 12 F.4th at 472 (certifying to the Texas Supreme Court the question of whether a plaintiff could satisfy its burden "with evidence indicating that the covered peril caused the entirety of the loss (that is, by implicitly attributing one hundred percent of the loss to that peril)") *and Overstreet*, 34 F.4th at 499 (same).

Guided by the decision in *Acadia*, the undersigned finds that Buttross has satisfied his burden under the concurrent-causation doctrine. Like the plaintiff in *Acadia*, Buttross provides evidence—Hall's report—that the April 2021 storm was the sole cause of the damage to the Properties.[11] *See* Dkt. No. 23-1. Thus, the undersigned finds that Buttross has provided a "reasonable basis" for a jury to "find that all of [his] loss comes from a covered cause." *Acadia*, 50 F.4th at 477.

---

[11] Admittedly, the *Acadia* Court also cited evidence that the record contained evidence demonstrating that the property there was in good shape before Hurricane Harvey. *Acadia*, 50 F.4th at 476 But as touched on above, Hall's report provides an adequate basis for dating the damage to the Properties that, if believed, would allow a jury to determine the condition of the Properties before April 12, 2021. *See* Dkt. No. 23-1.

To be sure, Great Lakes contests whether the April 2021 storm caused the damage at issue and provides evidence supporting its position. But this dispute is, at base, quintessentially factual and not fit for resolution by summary-judgment motion. *See, e.g.*, *Valleyview Church of Nazarene v. Church Mut. Ins. Co.*, No. 2:20-CV-222-Z-BR, 2022 WL 2718611, at *4 (N.D. Tex. July 13, 2022) (finding same). Accordingly, the undersigned RECOMMENDS that the Court deny the Motion for Summary Judgment on the breach-of-contract claim.

### 2. *The Court should deny Great Lakes's motion for summary judgment on the extracontractual claims.*

Great Lakes's only argument for summary judgment on the extracontractual claims is that those claims cannot survive if Buttross's breach-of-contract claim fails. Having found that summary judgment is not warranted on the contract claim, the undersigned RECOMMENDS that the Court deny the Motion for Summary Judgment on the extracontractual claims. *Valleyview Church*, 2022 WL 2718611, at *5 ("Because the coverage question remains unsettled, the Court cannot resolve Plaintiff's extracontractual claims.") (internal quotation marks omitted).

## VI. CONCLUSIONS AND RECOMMENDATIONS

For the reasons explained above, the undersigned RECOMMENDS that the Court:

(1) DENY Great Lakes's Motion to Exclude the Testimony and Report of Neil Hall to the extent that the Motion seeks to exclude Hall's testimony and report;

(2) GRANT Great Lakes's Motion to Exclude the Testimony and Report of Neil Hall in part and exclude portions of Hall's Declaration that serve as a rebuttal to Great Lakes's expert;

(3) DENY Great Lakes's Motion to Exclude the Testimony and Report of Kevin Funsch;

(4) DENY Great Lakes's Motion to Exclude the Testimony and Report of Dominick Claus; and

(5) DENY Great Lakes's Motion for Summary Judgment.

## VII.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days of being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 4th day of December 2023.

 

_____

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE